UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHASE PHILIP HORNADAY,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | CIV Case No. 4:25-cv-00253-BLW<br>CR Case No. 4:24-cr-00104-BLW-1<br><br>**ORDER** |

Petitioner Chase Hornaday (Petitioner) has filed a § 2255 Motion to Vacate Sentence that is now fully briefed. Civ. Dkts. 1, 8, 11. He brings ineffective assistance of counsel claims and prosecutorial misconduct claims.

**LAW AND PROCEDURES GOVERNING § 2255 CLAIMS**

Title 28 U.S.C. § 2255(a) permits a collateral challenge to the imposition or length of a federal criminal sentence, based upon four grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *See also* Rule 1, § 2255 Rules.

**MEMORANDUM DECISION AND ORDER - 1**

The § 2255 motion must: "(1) specify all the grounds for relief available to the moving party" and "(2) state the facts supporting each ground." Rule 2(b), § 2255 Rules.

Summary dismissal of a § 2255 motion is appropriate where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981). A petitioner's mere conclusory statements in a § 2255 motion "are not enough to require a hearing." *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969)); *see also United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) (where a prisoner's conclusory allegations are refuted by the record, an evidentiary hearing is not required).

In *United States v. Wilson*, No. 115CR000464NONESKO, 2022 WL 1460058 (E.D. Cal. May 9, 2022), the Court set forth the type of factual allegations necessary to warrant an evidentiary hearing, rather than disposal on the record:

> There is a material dispute created by the declarations of Wilson, his father, and his counsel. Wilson has made specific factual allegations—as opposed to conclusionary statements—to support his claim that he gave express instructions to his counsel to appeal, including where, when, how, and what was said. Assuming the truth of Wilson's allegations, Wilson has provided direct statements purportedly made by Wilson's counsel in response to Wilson's alleged requests, which are supported by Wilson's declaration as well as his father's.

**MEMORANDUM DECISION AND ORDER - 2**

*Id.* at *4.

Where credibility of parties and witnesses can be "'conclusively decided on the basis of documentary testimony and evidence in the record,'" no "evidentiary hearing to receive testimony from the petitioner" is required. *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1989) (citing *Watts v. U.S.*, 841 F.2d 275, 277 (9th Cir. 1988)). "Rule 4(b) recognizes that summary dismissal of meritless motions under § 2255 is appropriate to relieve the district courts from the heavy burden which an obligation of hearings and findings on these motions would impose." *Abatino v. United States*, 750 F.2d 1442, 1444 (9th Cir. 1985).

## BACKGROUND

On April 23, 2024, Petitioner was indicted on one count of Distribution of Child Pornography under 18 U.S.C. §§ 2252A(a)(2) & (b)(1) and 2256(8)(A); and one count of Possession of Child Pornography under 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) and 2256(8)(A). Petitioner was represented by retained attorney Allen H. Browning.

On August 26, 2024, Petitioner signed a plea agreement of guilty to Count One of the Indictment. During the October 23, 2024, Change of Plea hearing before United States Magistrate Judge Debora K. Grasham, Petitioner indicated that he was "satisfied with [his] attorney's representation of [him]" and that it was his "own decision to plead guilty; not [his] attorney's." Crim. Dkt. 47 at 9. He

**MEMORANDUM DECISION AND ORDER - 3**

indicated that no one forced him to plead guilty and that he was pleading guilty of his "own free will because [he was] in fact guilty" *Id*. at 20. Judge Grasham found there was a factual basis for the plea and recommended that the District Judge accept the guilty plea. *Id*. at 25.

On January 22, 2025, Petitioner's sentencing hearing was held. The Government recommended a sentence of 180 months; Petitioner's counsel recommended 60 months. Petitioner was sentenced to 144 months of imprisonment. Dkt. 46.

## REVIEW OF INEFFECTIVE ASSISTANCE CLAIMS

Petitioner asserts that his defense counsel, Mr. Browning, was ineffective for the following reasons:

1. He refused to propose a more favorable plea agreement to the Government.

2. He failed to perform an adequate investigation.

3. He was untimely throughout the case.

4. He was biased against Petitioner.

5. During one attorney-client meeting, Petitioner had to frequently remind Mr. Browning what the charges against Petitioner were.

**MEMORANDUM DECISION AND ORDER - 4**

### 1. Standard of Law: Ineffective Assistance of Counsel

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including pretrial matters, arraignments, post-indictment interrogations, post-indictment lineups, and entry of a guilty plea. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "Effective assistance" is defined by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must show (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have

**MEMORANDUM DECISION AND ORDER - 5**

been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id*.

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

### 2. Analysis of Claims

#### a. Plea Agreement Adequacy

Petitioner's first claim is that Mr. Browning refused to propose a more favorable plea agreement to the Government. Petitioner asked Mr. Browning to offer their own terms to the Government, but Mr. Browning refused. However, during the plea colloquy conducted by Judge Grasham and attended by Mr. Browning's associate, attorney Steve Carpenter, Petitioner accepted the facts as set forth in the plea agreement (Crim. Dkt. 47 at 19), stated he was satisfied with his attorney's representation "for the most part," and affirmed that it was his own decision to plead guilty; not his attorney's (*id*. at 9).

**MEMORANDUM DECISION AND ORDER - 6**

Petitioner did not assert at the hearing that he was entitled to better plea agreement terms or that his attorney refused to negotiate any further. A review of the plea agreement shows it is adequate under the circumstances. The agreement required the Government to dismiss one of the two counts charged in the Indictment. Crim. Dkt. 20 at 2. The agreement provided for up to three potential level reductions under certain conditions. *Id*. at 9. Consistent with the agreement, the Government recommended only a mid-guideline sentence. Dkt. 46 at 13. Therefore, Petitioner received several benefits from the plea agreement.

And, for *Strickland* "prejudice" purposes, the question is not whether a better plea agreement was possible; rather, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial on all charges. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner does not assert he would rather proceed to trial on Counts One and Two than accept the terms offered, including dismissal of Count Two and removing the potential for additional counts to be added to the Indictment by amendment.

Petitioner has not specified which different terms he believes should have been included in the plea agreement. Petitioner has failed to show that, if Mr. Browning had proposed Petitioner's desired unspecified plea deal to the

**MEMORANDUM DECISION AND ORDER - 7**

Government, the terms would have been more favorable to him and would have been accepted.

Petitioner has not shown that Mr. Browning's performance was deficient in negotiating the terms of the plea agreement under the first prong of *Strickland*. The question is not whether Mr. Browning could have performed better, but whether his performance was so deficient that he was not acting as constitutionally-required counsel. Mr. Browning performed adequately under this standard.

Nor has Petitioner meet the prejudice prong of *Strickland*. He has not stated (1) what better terms should have been proposed, (2) that the terms likely would have been accepted by the Government; or (3) that he would have gone to trial on all charges in the absence of a plea agreement. This claim fails on both *Strickland* prongs.

### b. Adequacy of Investigation

Mr. Browning allegedly rendered ineffective assistance in several areas related to the defense investigation. The law is clear that "appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense." *United States v. Wadsworth*, 830 F.2d 1500, 1509 (9th Cir. 1987) (citing *Henry v. Mississippi*, 379 U.S. 443, 451 (1965)). In general, an attorney's tactical decisions about how to present a defense are not subject to an ineffective assistance of counsel challenge. *Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001)

**MEMORANDUM DECISION AND ORDER - 8**

("disagreement with trial counsel's tactical decision cannot form the basis for a claim of ineffective assistance of counsel"); *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir. 1980) ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation.").

The *Strickland* Court outlined how to determine whether an investigation was adequate and a strategic decision was reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

(1) *Failure to investigate potential violations of Petitioner's due process rights and the validity of the search warrants*

Mr. Browning allegedly should have investigated whether any warrant or legal process leading to Petitioner's arrest and prosecution was legally improper. Dkt. 1 at 5. Detectives obtained and executed a search warrant on the entity "Kik," a social media application, for the account username "dickherd67." The information from Kik showed that the username dickherd67 and the IP address used to upload the child sexual abuse material (CSAM) belonged to Chase

**MEMORANDUM DECISION AND ORDER - 9**

Hornaday, of Ammon, Idaho. Dkt. 20 at 4. Another search warrant was obtained and executed to search Petitioner's home, and during execution of the warrant, officers also recovered Petitioner's cellular telephone from his person. The cell phone contained approximately 300 CSAM images. *Id*.

Even if it was deficient performance for Mr. Browning to fail to investigate a potentially defective warrant or a due process violation, Petitioner has not provided facts supporting a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different because of a warrant or due process issue. This subclaim will be dismissed for failure to meet *Strickland*'s second prong.

(2) *Failure to interview Petitioner's therapist*

Petitioner asserts that Mr. Browning was ineffective because he failed to interview Petitioner's VA therapist or obtain those records to show "expert-supported explanations of his behavior." Civ. Dkt. 11 at 2.

Even if Mr. Browning was deficient for this failure, Petitioner has not shown what information would have been produced and how that would have changed the outcome of Petitioner's sentencing.

The Court reviewed the Presentence Investigation Report (PSR) in preparation for sentencing. The PSR outlined Petitioner's traumatic life events:

**MEMORANDUM DECISION AND ORDER - 10**

> The defendant noted the traumas he suffered and witnessed while serving in the Marine Corps and while deployed to Iraq. Further, he reiterated his two tumultuous divorces and custody battles. He was diagnosed with depression in 2020 and had been seeking mental health services through the Veteran's Administration. He is currently prescribed Sertraline.

Crim. Dkt. 36 at 11.

The PSR noted that Petitioner's divorces occurred in 2007 and 2023, and that Petitioner described "the separation, divorce, and custody battle, as 'traumatic,' and that his life since has been 'utter anguish.'" Crim. Dkt. at 10. Petitioner also said that "his kids are 'all that matters' and would like to rebuild his relationship with them." *Id*.

The Court was aware from a character letter that, in 2013, his father had murdered Petitioner's aunt and then committed suicide. At sentencing, Court asked Mr. Browning why the defense had not raised this mitigating issue in the defense's briefing or sentencing recommendations and stated that it would like clarified information about this fact during the sentencing hearing. Crim. Dkt. 46 at 5-6, 8.

At the sentencing hearing, Mr. Browning explained that he had not investigated the 2013 incident because Petitioner's crimes occurred in 2023 and Petitioner had such a long history of trauma that Mr. Browning's focus was on the more recent trauma of Petitioner's two divorces and Marine Corps incidents. Crim. Dkt. 46 at 9. The Court responded, "That's fine. I just wanted to make sure I

**MEMORANDUM DECISION AND ORDER - 11**

understood the facts." *Id*. at 10. In the Government's argument, the prosecutor pointed to the murder/suicide history as being a "quite significant" mitigating factor. Dkt. 46 at 14. Mr. Browning's strategy was within reasonable parameters, and no deficient performance occurred. The fact that the Government agreed that the incident was "quite significant" shows no prejudice occurred, because, regardless of who raised the incident, it was considered as a mitigating factor.

On December 12, 2023, investigators received the search warrant return on Petitioner's Kik account. Investigators identified over 60 CSAM images and videos. Videos included infants being sexually abused, and children and infants being rape. Evidence showed Petitioner chatted with other users about trading CSAM images and videos. The offense level computation included four additional points for "sexual abuse of an infant or toddler." Crim. Dkt. 36 at 5. Thirteen victims submitted victim impact statements, and nine submitted restitution requests. *Id*. at 4-5.

Petitioner is correct that the Court informed Mr. Browning that his belief was erroneous that the probation officer should have interviewed the persons who submitted character/support letters for Petitioner. The Court told Mr. Browning, "[T]hat's really defense counsel's job." Crim. Dkt. 46 at 6. However, the Court's explanation of the PSR procedures should not be interpreted to mean that Mr. Browning was ineffective for not calling the persons who wrote the letters as

**MEMORANDUM DECISION AND ORDER - 12**

witnesses. More of this evidence would not have been fruitful for Petitioner. As noted in the sentencing transcript, Petitioner's crimes were of such a serious nature, more character evidence would not have change the outcome of his sentencing hearing.

Mr. Browning was correct in anticipating that the psychosocial evaluation performed by Dr. Linda Hatzenbuhler was very important evidence to be considered in sentencing. Mr. Browning highlighted the helpful portions of Dr.'s evaluation in his written sentencing recommendation, showing that Dr. Hatzenbuhler considers Petitioner a low risk of danger to children. Crim. Dkt. 40 at 2. In addition, Dr. Hatzenbuhler opined that Petitioner did not pose a risk of sexual harm to his own children. Crim. Dkt. 38 at 4.

After discussing the extent and nature of the trauma Petitioner experienced in his life, the Court focused on other factors and found:

> the application of 18 U.S. Code Section 3553(a)(2) … directs the Court to impose a sentence which is sufficient but not greater than necessary to reflect the seriousness of the crime, promote respect for the law, provide for just punishment, adequate deterrence, protection of the public, and any needed training, care, or correctional treatment. When I look at each of those factors, they by and large come down on the side of a fairly long prison sentence. First, the seriousness of the offense. This crime society, children, and not only just children but very young children in many situations. I think because of that a long sentence would not be inconsistent with promoting

**MEMORANDUM DECISION AND ORDER - 13**

> public respect for the law and would also be deemed a just sentence.

Crim. Dkt. 46 at 42-43.

The Court specifically noted that it considered these mitigating factors:

> As Mr. Paskett conceded, any person who serves in the United States Army, Marines, Air Force deserves our thanks and full consideration for the meaning of that service. Anyone who suffers injury, psychological or physical, in service to our country also deserves serious consideration, and I think my sentence does capture that as well. While I think there are clearly some other trauma that explain or at least provide some explanation for Mr. Hornaday's conduct here, it doesn't change the risk or the impact on the victims, and it is a part of being a human being that we will face stress in our lives, and resorting to criminal activity like this simply is not something that can be countenanced by the Court.

*Id*. at 44. Accordingly, no further character evidence would have changed the outcome of the hearing. This claims fails on both prongs of *Strickland*.

### (3) *Failure to use mental health other than the psycho-sexual evaluator*

Petitioner asserts that Mr. Browning should have introduced evidence about Petitioner's underlying reasons for committing the crime and mental health conditions, not just the report from Dr. Hatzenbuhler. Petitioner is not an attorney and does not realize that more is not necessarily better in litigation. Rather, an attorney may decide that the most relevant information from a neutral non-provider mental health expert supports the best defense.

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner has not shown how Mr. Browning failed to cover important mental health points in writing or oral argument. Petitioner's major life traumas were raised. Petitioner was portrayed as having had several breakdowns as a result of his traumas. Mr. Browning highlighted the fact that Petitioner did not act out in violent ways and did not commit any outward sexual assault against children or other person.

In addition, the fact that Petitioner's pornography had involved infants and toddlers would not have been overcome by delving into Petitioner's personal therapy. As noted at sentencing, the seriousness of this crime cannot be minimized by Petitioner's reasons for indulging in this type of behavior.

Even if Mr. Browning performed deficiently by not reviewing Petitioner's therapy records, Petitioner has not shown what the personal therapy records contained or that they would have changed the outcome of the sentencing, given the seriousness of the crimes. This subclaim will be denied.

> (4) *Failure to include evidence coming from sources other than from Petitioner's family and failure to interview additional friends and family*

Petitioner asserts that Mr. Browning did not include evidence from sources other than Petitioner's family in the sentencing presentation, but this claim, again, questions Mr. Browning's sentencing strategy. It is clear that Mr. Browning chose to make two important points. One point was that even ex-relatives who had

**MEMORANDUM DECISION AND ORDER - 15**

reasons to dislike him still voiced their support for him, including his first ex-wife and the father of his second ex-wife (importantly, the father was a judge). Crim. Dkt. 46 at 30.

The other point was to show that Petitioner has a strong support system within family and the community, including a counselor, Bob Starnes; a Marine comrade, Anthony Hales; a former pastor and current 12-step program counselor, Matt Woodroof; and a 12-step addiction peer mentor, Bruce Schneider. Crim Dkt. 33 at 2-3. Mr. Browning argued, "These are people within the circle of friends and support for Mr. Hornaday, people that he has stayed in close contact with, people, you know, that can give him the support that he needs to be successful in life after incarceration." Dkt. 46 at 30. Narrowing the support letters for these two reasons was sound sentencing hearing strategy; thus, Petitioner has not shown that he has met *Strickland* prong 1.

Petitioner also has not met the prejudice prong of *Strickland*. Additional good character references from persons outside Petitioner's family would not have made a difference stacked against the seriousness of these crimes. Petitioner has failed to show he has met either *Strickland* prong. This claim will be denied.

**MEMORANDUM DECISION AND ORDER - 16**

### (5) *Failure to argue that pornography is an addiction*

Petitioner asserts that Mr. Browning failed to argue that pornography is used like illegal drugs and can be an addiction causing unwanted abnormal behavior.

But, in fact, Mr. Browning argued:

> I wish the Court to consider several matters. I'm asking the Court to impose a sentence of 60 months, as I have stated in writing before the Court, of fixed time, and if the Court deems it necessary, only enough time following that fixed time to ensure that Mr. Hornaday does get appropriate treatment and counseling for this kind of porn addiction. And it is an addiction. And counsel has stated that he was found with porn in his home; it's an addiction. He was engaging—you know, involved in that addiction. So he would need to get treatment and counseling—the counseling and treatment that he was actually seeking before he was incarcerated on this case.
>
> I submit to the Court that incarcerating Mr. Hornaday for any time in excess of that amount will not serve as a greater deterrent for someone who is considering viewing child porn. People who get addicted to this material are not thinking rationally.
>
> I know Your Honor sends many people to incarceration for possessing or distributing these materials. And I'll bet that you have never encountered a single person who has admitted to considering what sentence they might get in federal court for viewing that material prior to becoming addicted to the material. I'm sure none of them do.

Crim. Dkt. 46 at 24-25.

**MEMORANDUM DECISION AND ORDER - 17**

Mr. Browning argues that Dr. Hatzenbuehler noted that Petitioner "feels guilt for his behavior and feels sorry for the victims and the photos that he viewed." Crim. Dkt. 46 at 29. Further, she opined that "Mr. Hornaday was very open about his offense and his addiction, and that makes him a good candidate for meaningful treatment." In addition, she noted that "Mr. Hornaday needs treatment for clinical depression, PTSD, and his own suicidal feelings." *Id*.

Petitioner himself also discussed pornography as an addiction during his allocution:

> I have struggled with pornography for most of my life, and it became my drug of choice to numb my pain. And like most drugs, the usage usually increases until it causes major problems. Some people look upon alcoholics or drug users with a certain level of pity and understanding. That doesn't seem to apply to pornography addiction. My inability to cope with life led me down a path that will forever be my biggest regret and lifelong shame. Even though I did not go looking for these hurtful and disgusting images, I allowed myself to be ensnared by what was thrown in my path, going against everything I have built my life to be.

> I thought self-medication with porn was a safer option than drugs or alcohol, but there is no safe option to drown out your pain. It needs to be addressed and worked through, but is something I began doing after I was originally arrested. I sought out therapy through the VA. I began Sexaholics Anonymous groups every week and a religious-based 12-step to recovery program. It is a difficult thing to admit you are powerless to overcome something. I have taken that step and began working on

**MEMORANDUM DECISION AND ORDER - 18**

others, and it's going to be a lifelong process but one well worth it.

Dkt. 46 at 36-37. This claim is without factual basis and has no merit.

### c. Untimeliness, Lack of Preparation Forgetfulness, and Inattention

Petitioner asserts that, during one meeting, he had to frequently remind Mr. Browning what the charges against Petitioner were. Defense counsel are not held to standard of perfection, and there is no evidence that this failure prejudiced Petitioner's case.

Petitioner alleges Mr. Browning was overwhelmed and consistently running behind schedule when working on Petitioner's case. Mr. Browning gave Petitioner's friends and family only 12 hours to submit reference letters; he did not prepare Petitioner for the pre-sentence investigation interview; he did not stay on the phone call for the full length of the pre-sentence investigation interview; he submitted online documents from his car in the court parking lot; and he arrived so late to the sentencing hearing that the Court had staff call him to see if he was coming.

The bar for showing this time of behavior amounts to ineffective assistance is high. For example, in *Robertson v. Beard*, No. 14CV0924AWIMJSHC, 2016 WL 4044932, at *13 (E.D. Cal. July 27, 2016), the court analyzed many of the same complaints about Robertson's defense counsel that Petitioner complains of here.

**MEMORANDUM DECISION AND ORDER - 19**

Robertson's counsel arrived late to court proceedings. The court determined that there was no reasonable likelihood that the outcome of the proceedings would have been different had trial counsel arrived earlier.

Robertson asserted that defense counsel forgot Robertson's name. The court could not find any instance where trial counsel forgot Robertson's name in the presence of the jury. If counsel forgot Robertson's name outside of the presence of the jury, the court determined it did not cause any prejudice to the defense. Even if counsel forgot Robertson's name in the presence of the jury, the court concluded that such a mistake does not create a reasonable probability that he would not have been convicted of rape. *Id*. at \*13.

For comparison purposes, the Court notes that Robertson also asserted that his trial counsel fell asleep and was sometimes intoxicated during the jury trial—allegations that surpass Mr. Browning's alleged behavior complained of in this case. The *Robertson* court found no prejudice from any such behavior, and Petitioner has shown none here. Even Robertson's more serious concerns were rejected by that court as inadequate to show ineffective assistance of counsel. This claim fails.

### d. Bias

Petitioner claims that Mr. Browning's brother is a sex offender, that his brother's case involved the same type of conduct as Petitioner, and that fact made

**MEMORANDUM DECISION AND ORDER - 20**

Mr. Browning biased against Petitioner. Civ. Dkt. 1 at 5. A criminal defendant has the right to be represented by conflict-free counsel under the Sixth Amendment. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). But the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

An "actual conflict" is "a conflict that affected counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). A defendant "must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client." *McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003). To prove that a conflict had an adverse effect on counsel's performance, a defendant must show "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Stantini*, 85 F.3d 9, 16 (2d Cir. 1996).

Petitioner says that Mr. Browning did not pursue "readily available mitigating strategies" as a result of the bias. Dkt. 11 at 4. This, however, is mere speculation. A review of the sentencing hearing transcript shows that Mr. Browning focused on several essential points: Petitioner's recent life traumas, Petitioner's service in the military, the favorable opinions of the sex offender evaluation, and

**MEMORANDUM DECISION AND ORDER - 21**

opinions of people who had worked with him in the 12-step program and others who thought highly of him despite his offensive behaviors towards them.

Petitioner simply disagrees with Mr. Browning's mitigation strategy without making any causal connections to a bias. Nothing shows that Mr. Browning selected a strategy that was unfavorable to Petitioner or failed to pursue other avenues of mitigation because of anything related to Mr. Browning's brother's conviction. Even if an actual personal conflict of interest existed, Mr. Browning's performance and Petitioner's defense were not compromised. This subclaim will be denied.

## REVIEW OF PROSECUTORIAL MISCONDUCT CLAIMS

Defendant brings two prosecutorial misconduct claims.

### 1. The Prosecutor Coerced Petitioner into Pleading Guilty

Petitioner asserts that the prosecutor's office gave him only an ultimatum—to plead to the Government's terms or suffer an Indictment amendment with ten times the number of charges. He asserts that the FBI regularly "trumps up" additional charges to force defendants to accept pleas. He also asserts that the prosecutors offered better terms to other defendants after he agreed to these terms.

In *United States v. Goodwin,* 457 U.S. 368 (1982), the Supreme Court held that a prosecutor's decision to file additional charges against a defendant after the defendant has refused to plead guilty does not give rise to a presumption of

**MEMORANDUM DECISION AND ORDER - 22**

vindictive prosecution. *Id.* at 382–83. The Ninth Circuit has recognized that, during plea negotiations, prosecutors may threaten additional charges and carry out this threat, and that the filing of additional charges after a defendant refuses to plead guilty does not raise a presumption of vindictiveness. *United States v. Van Doren*, 182 F.3d 1077, 1082 (9th Cir. 1999).

The Supreme Court and the Ninth Circuit have long held that a prosecutor may threaten to bring more serious charges against a defendant during plea negotiations to induce him to plead guilty. *Bordenkircher v. Hayes,* 434 U.S. 357, 365 (1977); *cf. United States v. Murphy,* 65 F.3d 758, 763 (9th Cir. 1995) ("plea bargaining, by its nature, necessarily deters a defendant from exercising his right to trial." *Murphy,* 65 F.3d at 763 (citation omitted). Petitioner's fear that the Government might bring additional charges against him based on the evidence if he proceeded to trial is merely a statement of potential future consequences that the Government is allowed to articulate during plea negotiations. *See id.*

A guilty plea is coerced only where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986) (quotation marks and citation omitted). During the plea colloquy, Petitioner acknowledged the Plea Agreement stating that he acknowleged his "plea [was] voluntary and did not result from force, threats, or promises, other than any promise made in this agreement." Crim. Dkt. 20 at 2.

**MEMORANDUM DECISION AND ORDER - 23**

Judge Grasham made a thorough inquiry at the change of plea hearing. Judge Grasham asked Petitioner whether he had read and reviewed the charges in the superseding indictment with his attorney and understood the maximum penalty, and Petitioner affirmed that he had done so. Crim. Dkt. 47 at 2. Petitioner also said he knowingly and voluntarily waived his right to trial (*id*. at 6), discussed with his attorney and understood and accepted all the facts in the charges (*id*. at 8), accepted the facts as set forth in the plea agreement (*id*. at 19); (5) and was satisfied with his attorney's representation (*id*. at 9). Judge Grasham directly asked: "[I]t is your own decision to plead guilty; not your attorney's?" *Id*. at 9. Petitioner affirmed that it was. *Id.* at 9:8.

Based on the entire record, the Court concludes that no prosecutorial misconduct occurred during plea bargaining. The record does not reflect coercion, and Petitioner indicated under penalty of perjury that he agreed with the terms of the plea agreement and he did not raise any issues of prosecutorial misconduct in either the change-of-plea hearing or the sentencing hearing.

## 2. The Prosecutor Failed to Disclose Evidence Favorable to Petitioner

Petitioner asserts that the prosecutor failed to disclose evidence that was favorable to Petitioner. Petitioner assumes this is true because he does not recall being sent anything of this nature from the prosecutor. These allegations are

**MEMORANDUM DECISION AND ORDER - 24**

speculative. Petitioner does not state which exculpatory evidence was allegedly withheld and how it would have changed the outcome of his case. No prosecutorial misconduct claim is stated by these allegations unsupported by any facts.

## CONCLUSION

For all of the foregoing reasons, Petitioner has failed to show that he is entitled to relief on any claim. To the extent that the Court has not addressed every argument of Petitioner, the Court rejects them by denying the § 2255 Motion and dismissing this case in full.

## ORDER

**IT IS ORDERED:**

1. Defendant's § 2255 Motion (Civ. Dkt. 1; Crim. Dkt. 44) is DENIED with prejudice.

2. The Court will not grant a certificate of appealability. Defendant may request one from the Ninth Circuit Court of Appeals.



DATED: July 24, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 25**